ALICIA MOORE, Petitioner v. CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, Respondent

No. COA06-601

(Filed 4 September 2007)

**1. Schools and Education— probationary teacher—contract not renewed—no right to evidentiary hearing before Board**

There is no implicit right to notice and a hearing before the board of education on the issue of nonrenewal for a probationary teacher in N.C.G.S. § 115C-325, which authorizes direct judicial review in superior court of a nonrenewal decision. Although plaintiff argues that judicial review is merely pro forma without a hearing process before the board, the Court of Appeals is not permitted to read matters into an unambiguous statute.

**2. Schools and Education— probationary teacher—not renewed—no right to hearing before board**

A probationary teacher whose contract was not renewed was not granted a right to a hearing before the board of education by N.C.G.S. § 115C-45, which deals with appeals to a local board of

education from a final administrative decision. If the Legislature had meant to bestow hearing rights on probationary teachers, it would have done so explicitly.

**3. Schools and Education— probationary teacher—contract not renewed—superior court consideration—documents not considered**

The superior court properly struck from the record documents that a probationary teacher had offered on appeal from a school board decision to not renew her contract. Although plaintiff argues that judicial review will be futile if probationary teachers are prevented from offering evidence at a board hearing and before the superior court, a prior Court of Appeals decision held that a trial court sits as an appellate court on appeal of a school board decision.

**4. Schools and Education— probationary teacher—contract not renewed—record sufficient**

The record was sufficient under the whole record test to support the school board's decision not to renew a probationary teacher's contract as non-arbitrary. Nothing in controlling case law suggests that an evidentiary hearing is necessary.

**5. Schools and Education— probationary teacher—contract not renewed—superintendent's decision**

A letter recommending that a probationary teacher's contract not be renewed that was signed by someone other than the superintendent was sufficient where the language of the letter resolved any doubt that the superintendent made the recommendation.

Appeal by petitioner from order entered 9 January 2006 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 February 2007.

*Ferguson, Stein, Chambers, Gresham & Sumter, P.A., by S. Luke Largess, for petitioner-appellant.*

*Helms Mullis & Wicker, PLLC, by H. Landis Wade, Jr. and Melissa M. Kidd, for respondent-appellee.*

*Tharrington Smith, L.L.P., by Deborah R. Stagner and Ann L. Majestic; and North Carolina School Boards Association, by Allison B. Schafer, for Amicus Curiae North Carolina School Boards Association.*

GEER, Judge.

Petitioner Alicia Moore appeals from a decision of the superior court upholding the non-renewal of her teaching contract by respondent Charlotte-Mecklenburg Board of Education (the "Board"). On appeal, Ms. Moore primarily argues that the Board deprived her of a statutory right to have an evidentiary hearing before the Board on the non-renewal issue. Based upon our review of the plain language of the pertinent statutes as well as controlling precedent from the North Carolina appellate courts, we hold that the trial court properly concluded that Ms. Moore was not entitled to the hearing she sought. Her remaining arguments on appeal have been resolved against her by *Davis v. Macon County Bd. of Educ.*, 178 N.C. App. 646, 651, 632 S.E.2d 590, 594, *disc. review denied*, 360 N.C. 645, 638 S.E.2d 465 (2006), an opinion filed after submission of Ms. Moore's brief in this appeal. We, therefore, affirm the order of the superior court.

Facts

During the academic year 2004-2005, Ms. Moore worked as a middle school teacher in the Charlotte-Mecklenburg school system. Ms. Moore was employed on a year-to-year contract with the school district. In January 2005, the principal of the school sent a letter to Ms. Moore, stating that he had received complaints that she had used a ruler to hit students and also had used profanity in front of them. The letter directed Ms. Moore to leave school grounds because of the allegations.

Several days later, Ms. Moore responded in writing to the allegations. In her letter, she told the principal that she used a yardstick or ruler "to awaken students or get their attention by slapping it down on a desk" and to "prod[] them to get in a straight line (playfully), showing them what a straight line is." As for the use of profanity, Ms. Moore admitted that, in moments of frustration, she "may some times say 'ah damn' or 'shit where did it go?' or the like (under my breath)" but that none of the "irresponsible outbursts" was directed at her students. She added that she relocated the student who sat closest to her desk because of an "awareness" that her "outbursts" might be overheard by that student.

Following an investigation into the allegations of misconduct, the school district "determined that [Ms. Moore] did indeed make inappropriate contact with [her] students by hitting and prodding them with a yardstick" and there was "evidence that supported allegations

that [she] consistently cursed at the students also and not just in their presence." On 24 March 2005, Charles Head, an Employee Relations Specialist with the school system, sent a formal reprimand letter to Ms. Moore in which he stated that her conduct violated school policy and ordered her to refrain from further such conduct. Ms. Moore submitted no written response to that letter.

Less than two months later, at the appropriate time for non-renewal recommendations, Charles Head authored a letter to the Board stating that the superintendent was recommending that Ms. Moore's contract not be renewed. This letter cited the superintendent's belief that "continued employment of Ms. Moore would pose a threat to the physical safety of students or personnel or that the person [sic] has demonstrated that he or she does not have sufficient integrity, ethics or other traits to fulfill his or her duties as a public school employee."

In support of the recommendation, the administration compiled certain materials and submitted them to the Board. Those materials included: the May 2005 letter recommending non-renewal; a 2004-2005 performance evaluation that gave Ms. Moore a "below standard" rating in the area of "management of student behavior" and an "unsatisfactory" rating in the area of "communicating within the educational environment"; the 24 March 2005 letter from Charles Head outlining the findings of the administration's investigation into the allegations of misconduct; the principal's 13 January 2005 letter to Ms. Moore; other documents relating to the investigation, including written statements from five students; and documentation relating to two instances in the 2002-2003 school year when an assistant principal had accused Ms. Moore of insubordination. The materials also included Ms. Moore's January 2005 letter, in which she defended herself against the allegations regarding the use of the ruler and profanity.

On 24 May 2005, the Board considered the superintendent's recommendation and voted not to renew Ms. Moore's teaching contract. Ms. Moore responded to the decision by requesting, through counsel, a hearing before the Board pursuant to the appeal provisions of N.C. Gen. Stat. § 115C-45(c) (2005). After the Board denied her request for a hearing, Ms. Moore appealed the non-renewal decision to Mecklenburg County Superior Court "pursuant to G.S. §115C-325(n) and G.S. §115C-45(c)" on the grounds "that the decision violated G.S. §115C-325(m)(2) and was made under unlawful procedure."

In its response filed with the superior court, the Board denied Ms. Moore's allegations and submitted the record considered by the Board. Ms. Moore filed an affidavit accompanied by 12 attachments, consisting of e-mails, written observations, and personnel documents that had not been included in the Board's record. The Board moved to strike these submissions, contending that "[i]n the case of a non-renewal of a probationary teacher, the record on appeal is limited solely to those documents that were part of the administrative, or Board, record."

The superior court entered a final order on 9 January 2006. In its order, the court allowed the Board's motion to strike, stating "that Petitioner's Affidavit and the twelve exhibits attached thereto are not part of the Board Record, and that they should not be included as part of the Board Record." Based on "the entire Board record as relied upon by the Board of Education," the court then held "that Respondent's decision was not arbitrary, capricious, discriminatory, or for personal or political reasons, and was supported by substantial evidence when considering the record as a whole." Lastly, the court determined "that Petitioner was not entitled to an adversarial, evidentiary hearing to be held prior to any decision by Respondent not to renew her employment contract, and that this matter is not to be remanded to Respondent for that purpose." Ms. Moore timely appealed this order.

## Statutory Framework

A probationary teacher is "a certificated person, other than a superintendent, associate superintendent, or assistant superintendent, who has not obtained career-teacher status and whose major responsibility is to teach or to supervise teaching." N.C. Gen. Stat. § 115C-325(a)(5) (2005). After a probationary teacher "has been employed by a North Carolina public school system for four consecutive years," the local school board must vote to determine "whether to grant the teacher career status." N.C. Gen. Stat. § 115C-325(c)(1).

Once a teacher achieves career status, the General Assembly has prescribed a detailed procedure that must be followed before that career teacher may be dismissed or demoted. See N.C. Gen. Stat. § 115C-325(h)-(j3). This procedure includes a teacher's right to receive notice of an adverse recommendation by the superintendent, to be heard before a case manager and/or the board of education, to present evidence, and generally to defend against whatever the charges or allegations might be. See id.

In contrast, the General Assembly has provided with respect to probationary teachers:

(m) Probationary Teacher.

(1) The board of any local school administrative unit may not discharge a probationary teacher during the school year except for the reasons for and by the procedures by which a career employee may be dismissed as set forth in subsections (e), (f), (f1), and (h) to (j3) above.

(2) The board, upon recommendation of the superintendent, may refuse to renew the contract of any probationary teacher or to reemploy any teacher who is not under contract for any cause it deems sufficient: Provided, however, that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons.

N.C. Gen. Stat. § 115C-325(m). Thus, the General Assembly established a bifurcated framework with respect to probationary teachers. During the school year, they may not be discharged "except for the reasons for and by the procedures by which a career employee may be dismissed . . . ." N.C. Gen. Stat. § 115C-325(m)(1). But, upon expiration of the probationary teacher's contract, the board "may refuse to renew the contract . . . for any cause it deems sufficient . . . ." N.C. Gen. Stat. § 115C-325(m)(2).

The only stated limitation on the board's authority to not renew the probationary teacher's contract is "that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons." *Id.* If a probationary teacher believes that a board's non-renewal decision is motivated by or premised upon one of the prohibited reasons, the teacher may appeal the decision directly to superior court under N.C. Gen. Stat. § 115C-325(n): "any probationary teacher whose contract is not renewed under G.S. 115C-325(m)(2) shall have the right to appeal from the decision of the board to the superior court . . . ."

The provision authorizing a probationary teacher to directly appeal a non-renewal decision to superior court, § 115C-325(n), was added to the statute in 1997 and represented a departure from the pre-1997 remedial scheme. *See* 1997 N.C. Sess. Laws 221, § 13. Prior to 1997, when "no statutory right to appeal exist[ed]," a non-renewed probationary teacher could challenge the decision not to renew his or her contract by filing suit and obtaining a trial on the issues arising under N.C. Gen. Stat. § 115C-325(m)(2). *See Spry v. Winston-*

*Salem/Forsyth County Bd. of Educ.*, 105 N.C. App. 269, 273, 412 S.E.2d 687, 689, *aff'd per curiam*, 332 N.C. 661, 422 S.E.2d 575 (1992).

On appeal of a decision of a school board, pursuant to the amended N.C. Gen. Stat. § 115C-325(n), "a trial court sits as an appellate court and reviews the evidence presented to the school board." *Davis v. Macon County Bd. of Educ.*, 178 N.C. App. 646, 651, 632 S.E.2d 590, 594, *disc. review denied*, 360 N.C. 645, 638 S.E.2d 465 (2006). Review of a school board's decision is governed by N.C. Gen. Stat. § 150B-51 (2005) of the North Carolina Administrative Procedure Act ("APA"). *Davis*, 178 N.C. App. at 651, 632 S.E.2d at 594. Under the APA, the court may reverse or modify a school board's decision only if the petitioner's substantial rights may have been prejudiced because the board's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b)(1)-(6).

"A *de novo* standard of review applies to asserted errors under subsections (1) through (4) of N.C.G.S. § 150B-51(b), while errors under subsections (5) and (6) of this statute are reviewed under the whole record test." *Davis*, 178 N.C. App. at 652, 632 S.E.2d at 594. When conducting de novo review, the court considers the matter anew and may freely substitute its own judgment for the board's. *In re Alexander v. Cumberland County Bd. of Educ.*, 171 N.C. App. 649, 654, 615 S.E.2d 408, 413 (2005). The whole record test, by contrast, requires the reviewing court to examine all competent evidence and determine whether the board's decision is supported by "substantial evidence." *Davis*, 178 N.C. App. at 652, 632 S.E.2d at 594.

Finally, "[w]hen an appellate court reviews 'a superior court order regarding [a board] decision, the appellate court examines the

trial court's order for error of law.' " *Alexander*, 171 N.C. App. at 655, 615 S.E.2d at 413 (quoting *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 18 (2002)). Our task is essentially twofold: " '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Id.* (quoting *Mann Media*, 356 N.C. at 14, 565 S.E.2d at 18).

## Board's Denial of Evidentiary Hearing

[1] Ms. Moore first contends that "a probationary teacher is entitled to some sort of evidentiary hearing prior to judicial review of a school board decision not to renew the teacher's contract." Since this question raises issues of law, de novo review applies.

As Ms. Moore acknowledges, N.C. Gen. Stat. § 115C-325(m)(2)— the provision specifically setting forth the rights of probationary teachers—fails to expressly provide any right to a hearing before the Board. Ms. Moore, however, essentially asks this Court to find that a right to notice and a hearing is implicit in N.C. Gen. Stat. § 115C-325.

In matters of statutory interpretation, it is well established that legislative intent is first ascertained from the plain words of the statute. "When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386,.388-89 (1978).

The plain language of the statutes at issue do not support the implied remedy sought by Ms. Moore. The detailed procedure set forth for career teachers in § 115C-325(h)-(j3), set out just prior to the probationary teacher provision, is made applicable only to probationary teachers dismissed during the school year. *See* N.C. Gen. Stat. § 115C-325(m)(1) (providing that a probationary teacher may not be subject to mid-year dismissal "except for the reasons for and by the procedures by which a career employee may be dismissed as set forth in [§ 115C-325(e), (f), (f1), and (h) to (j3)]"). Moreover, the General Assembly specifically addressed a Board's non-renewal decision in N.C. Gen. Stat. § 115C-325(o): "A probationary teacher whose contract will not be renewed for the next school year shall be notified of this fact by June 15." A reasonable construction of this provision is that the Board is only required to notify the probationary teacher once its non-renewal decision has been made, but this notification must occur no later than June 15.

By contrast, the General Assembly has expressly required, in the case of school administrators and career teachers, that the superintendent give *prior* notice regarding a recommendation that may adversely affect the employee's future status. *See* N.C. Gen. Stat. § 115C-287.1(d) (2005) ("the superintendent shall give the school administrator written notice of his or her decision and the reasons for his or her decision"); N.C. Gen. Stat. § 115C-325(h)(2) ("the superintendent shall give written notice to the career employee by certified mail or personal delivery . . . and shall set forth as part of his recommendation the grounds upon which he believes . . . dismissal or demotion is justified"). The absence of any *prior* notice requirement in the non-renewal provision applicable to probationary teachers is further evidence that the legislature did not intend to require an evidentiary hearing in the case of probationary teachers.

Ms. Moore argues, however, that such a right must be inferred from the 1997 amendment to § 115C-325(n) authorizing direct judicial review in superior court of the Board's non-renewal decision. She reasons that, unless some hearing process before the Board is read into the amendment, judicial review under § 115C-325(n) will be merely a *pro forma* exercise incapable of policing non-renewal decisions for arbitrary, capricious, discriminatory, personal, or political motivation.

Although prior to the 1997 amendment relied upon by Ms. Moore, a non-renewed probationary teacher was able to file a lawsuit in superior court—and pursue discovery, submit evidence, and obtain a jury trial—the legislature in amending § 115C-325(n) replaced this pre-1997 independent action with "a specific appeal process" for probationary teachers not renewed. *Craig v. Asheville City Bd. of Educ.*, 142 N.C. App. 518, 520, 543 S.E.2d 186, 188 (2001). This change brought judicial review of non-renewal decisions in line with review of other school board decisions. N.C. Gen. Stat. § 115C-325(n), as amended, provides:

> (n) Appeal.—Any career employee who has been dismissed or demoted under G.S. 115C-325(e)(2), or under G.S. 115C-325(j2), or who has been suspended without pay under G.S. 115C-325(a)(4a), or any school administrator whose contract is not renewed in accordance with G.S. 115C-287.1, *or any probationary teacher whose contract is not renewed under G.S. 115C-325(m)(2) shall have the right to appeal from the decision of the board to the superior court* for the superior court dis-

trict or set of districts as defined in G.S. 7A-41.1 in which the career employee is employed. This appeal shall be filed within a period of 30 days after notification of the decision of the board. The cost of preparing the transcript shall be determined under G.S. 115C-325(j2)(8) or G.S. 115C-325(j3)(10). A career employee who has been demoted or dismissed, or a school administrator whose contract is not renewed, who has not requested a hearing before the board of education pursuant to this section shall not be entitled to judicial review of the board's action.

(Emphasis added.)

Significantly, this statute focuses not on the procedures governing the Board's non-renewal decision, but rather on the procedural mechanism by which a probationary teacher may challenge that decision. Moreover, Ms. Moore's reliance on this statute is undercut by its final sentence: "*A career employee* who has been demoted or dismissed, or *a school administrator* whose contract is not renewed, who has not requested a hearing before the board of education pursuant to this section shall not be entitled to judicial review of the board's action." *Id.* (emphasis added). If the General Assembly had intended to provide for a hearing before the Board for probationary teachers, it would have certainly required that probationary teachers seek such a hearing as a precondition for judicial review.

Nonetheless, Ms. Moore argues that adverse consequences will inevitably flow from any construction of § 115C-325(n) that does not require a right to a hearing before the Board. According to Ms. Moore, such a construction would risk (1) rendering the statute unconstitutional and (2) eliminating the requirement of exhaustion of administrative remedies since any remedy under the statute would be futile.[1] While Ms. Moore thus urges us to "read into" § 115C-325(n) a remedial process that arguably might make the scheme more effective, fair, or meaningful, we are not permitted to read matters into an unambiguous statute. As our Supreme Court has explained: "The duty of a court is to construe a statute as it is written. It is not the duty of a court to determine whether the legislation is wise or unwise, appropriate or inappropriate, or necessary or unnecessary."

---

1. Ms. Moore has not preserved for review any question whether the statute—if construed as the superior court did—is unconstitutional. Nor does this appeal present any question regarding exhaustion of administrative remedies. Since those questions are not properly before us, we express no opinion on them. Until properly raised, those questions must be considered by the individual Boards of Education in deciding whether or not to provide a hearing before the Board.

*Campbell v. First Baptist Church of the City of Durham*, 298 N.C. 476, 482, 259 S.E.2d 558, 563 (1979); *see also Ferguson v. Riddle*, 233 N.C. 54, 57, 62 S.E.2d 525, 528 (1950) (holding that when a statute is clear, "[w]e have no power to add to or subtract from the language of the statute").

Our obligation in this case is, therefore, simply to construe the meaning of N.C. Gen. Stat. § 115C-325(m) and (n) and decide whether those provisions encompass the right to a hearing before the Board. Based on the statute's plain language, therefore, we hold that the statute does not entitle probationary teachers facing non-renewal to an evidentiary hearing before the Board.

**[2]** Ms. Moore next argues that N.C. Gen. Stat. § 115C-45(c)(2)-(3) grants her a right to a hearing before the Board:

An appeal shall lie to the local board of education from any final administrative decision in the following matters:

. . . .

(2) An alleged violation of a specified federal law, State law, State Board of Education policy, State rule, or local board policy . . . ;

(3) The terms or conditions of employment or employment status of a school employee . . . .

Our Supreme Court has, however, already resolved this contention against Ms. Moore.

In *Still v. Lance*, 279 N.C. 254, 261, 182 S.E.2d 403, 407 (1971), the Supreme Court held that N.C. Gen. Stat. § 115-34 had "no application" in the case of a teacher terminated without a hearing before the board of education. N.C. Gen. Stat. § 115-34 was subsequently repealed and replaced by N.C. Gen. Stat. § 115C-45. We have held that those two statutes "are not 'materially different.' " *Cooper v. Bd. of Educ. for Nash-Rocky Mount Schs.*, 135 N.C. App. 200, 202, 519 S.E.2d 536, 538 (1999) (quoting *Williams v. New Hanover County Bd. of Educ.*, 104 N.C. App. 425, 429, 409 S.E.2d 753, 756 (1991)).

The Court in *Still* held that, under § 115-34, the non-renewed teacher was not entitled to a board hearing because that statute concerned appeals "from decisions of school personnel to the . . . board of education" whereas "[t]he decision of which the plaintiff complain[ed] [was] the decision of the County Board of Education." 279 N.C. at 261, 182 S.E.2d at 407-08. This Court has since confirmed

that "*Still v. Lance* . . . holds that G.S. 115-34 has no application where the decision complained of is the decision of a county board of education." *Murphy v. McIntyre*, 69 N.C. App. 323, 328, 317 S.E.2d 397, 400 (1984).

N.C. Gen. Stat. § 115C-45, the "replacement" of § 115-34, underwent further amendment in 2001. Prior to amendment, § 115C-45 provided that "[a]n appeal shall lie from the decision of all school personnel to the appropriate local board of education." The amendments narrowed the right to appeal from "the decision of all school personnel" to "any final administrative decision" in certain specified matters, with "final administrative decision" defined as "a decision of a school employee from which no further appeal to a school administrator is available." 2001 N.C. Sess. Laws ch. 260 § 1. Since the appeal is still from the decision of a school employee to the Board, we see no basis for concluding that these amendments altered the applicability of *Still*. We are, therefore, still bound by *Still* and *Murphy* and hold that N.C. Gen. Stat. § 115C-45 does not entitle Ms. Moore to a hearing before the Board on its decision to not renew her contract.

Further support for this conclusion is evident in N.C. Gen. Stat. § 115C-287.1(d), which sets forth procedures relating to the renewal, non-renewal, and extension of school administrators' employment contracts:

> If a superintendent decides not to recommend that the local board of education offer a new, renewed, or extended school administrator's contract to the school administrator, the superintendent shall give the school administrator written notice of his or her decision and the reasons for his or her decision no later than May 1 of the final year of the contract. The superintendent's reasons may not be arbitrary, capricious, discriminatory, personal, or political. No action by the local board or further notice to the school administrator shall be necessary unless the school administrator files with the superintendent a written request, within 10 days of receipt of the superintendent's decision, for a hearing before the local board. . . . *If a school administrator files a timely request for a hearing, the local board shall conduct a hearing pursuant to the provisions of G.S. 115C-45(c)* and make a final decision on whether to offer the school administrator a new, renewed, or extended school administrator's contract.

N.C. Gen. Stat. § 115C-287.1(d) (emphasis added). The existence of language granting administrators the right to a hearing "pursuant to

the provisions of G.S. 115C-45(c)" confirms that when the General Assembly intended to afford notice and hearing rights, it did so in unambiguous terms.

Therefore, had the legislature also intended to bestow hearing rights on probationary teachers pursuant to the provisions of § 115C-45(c), we must presume that it would have done so explicitly. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 151 L. Ed. 2d 908, 922, 122 S. Ct. 941, 951 (2002) ("[I]t is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting *Russello v. United States*, 464 U.S. 16, 23, 78 L. Ed. 2d 17, 24, 104 S. Ct. 296, 300 (1983))). *See also Satterfield v. Edenton-Chowan Bd. of Educ.*, 530 F.2d 567, 570 n.4 (4th Cir. 1975) ("That this omission of a right to a hearing in the case of a probationary teacher was not inadvertent but purposeful appears plain from the other provisions in the Amendments which specifically require hearings on the nonrenewal of the contract of a 'career teacher' (i.e., one with tenure). The absence of any similar provision for probationary teachers in the Amendments compels, it seems to us, the conclusion that no such right to a hearing was intended or contemplated for the probationary teacher denied renewal.").

In sum, the statutes applicable to probationary teachers are devoid of any expression of an intent to attach hearing rights to the decisions to not renew probationary teachers' contracts. The explicit grant of advance notice and hearing rights to other classes of school employees—but not to probationary teachers—makes this conclusion inescapable.[2] To obtain a right to a hearing before the Board, probationary teachers must look to the General Assembly and not the courts. Our hands are tied by the statutes' plain language.

### Motion to Strike Exhibits

[3] Ms. Moore next contends that the superior court improperly struck from the record the additional documents she offered for the court's consideration. She argues on appeal that these documents would have shown (1) that she used a ruler without complaint over

---

2. The parties have debated the applicability of N.C. Gen. Stat. § 115C-325(b) to these proceedings, but that question is not before us since Ms. Moore did not base her appeal below on a violation of § 115C-325(b) and did not include any error based on this provision in her assignments of error.

several years, (2) that "she was lauded for all but one of her interactions with her students over 3.5 years," and (3) she was praised for "her effectiveness with the toughest kids in the system" by other school administrators. Whatever the value of Ms. Moore's extra-record documents, the trial court's decision was proper in light of this Court's recent decision in *Davis.*

*Davis* also involved a probationary teacher whose contract had not been renewed. She appealed the board decision on the grounds that it violated N.C. Gen. Stat. § 115C-325(m)(2). 178 N.C. App. at 649-50, 632 S.E.2d at 593. This Court held that "[o]n appeal of a decision of a school board, a trial court sits as an appellate court and *reviews the evidence presented to the school board." Id.* at 651, 632 S.E.2d at 594 (emphasis added).

Although Ms. Moore argues judicial review will be futile if probationary teachers are prevented from offering evidence at a Board hearing and then are also barred from presenting evidence before the superior court to demonstrate prejudice or discrimination, we are bound by *Davis. In re Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Consequently, we hold the superior court did not err in striking the additional documents.

### The Board's Decision

[4] The last issue raised by Ms. Moore "is whether the Board failed to inquire into the recommendation and undertake 'fair and careful' consideration of the non-renewal decision." Although conceding that "the record reveals a reason for the non-renewal," Ms. Moore argues that "[t]he lack of any inquiry into or awareness of contrary information makes the [Board's] decision arbitrary" and, therefore, unsustainable on appeal to superior court. Again, our recent decision in *Davis* is dispositive.

*Davis* recognized our prior decisions " 'impos[ing] a duty on boards of education to determine the substantive bases for recommendations of non-renewal and to assure that non-renewal is not for a prohibited reason.' " *Davis,* 178 N.C. App. at 655, 632 S.E.2d at 596 (quoting *Abell v. Nash County Bd. of Educ.,* 71 N.C. App. 48, 52, 321 S.E.2d 502, 506 (1984), *disc. review denied,* 313 N.C. 506, 329 S.E.2d 389 (1985)). Relying further on *Abell,* the *Davis* Court explained:

"[T]he advisory nature of the superintendent's recommendation to not rehire a non-tenured teacher places the responsibility on the Board to ascertain the rational basis for the recommendation before acting upon it." However, a school board need not "make exhaustive inquiries or formal findings of fact[.]" Rather, "the administrative record, be it the personnel file, board minutes or recommendation memoranda, should disclose the basis for the board's action."

*Id.* at 655-56, 632 S.E.2d at 596 (second alteration original) (internal citations omitted) (quoting *Abell,* 71 N.C. App. at 53, 321 S.E.2d at 506-07). *Davis* then found that the board's inquiry was sufficient— and the superior court properly applied the whole record test—when the record showed (1) that the superintendent conducted an investigation into the teacher's alleged misconduct and reviewed two "below standard" performance evaluations given to the teacher; (2) the superintendent presented a summary of his investigation to the board along with his non-renewal recommendation; and (3) the board considered the information presented by the superintendent. *Id.* at 657, 632 S.E.2d at 597.

The circumstances of this case are substantially similar. The record here demonstrates that the school administration investigated allegations that Ms. Moore inappropriately used a ruler and profanity while teaching; the administration found these allegations to be supported by evidence; the administration communicated its findings to the Board, in addition to information about Ms. Moore's performance evaluation, containing a "below standard" and "unsatisfactory" with respect to certain elements; and, in conjunction with all of this information, the superintendent recommended non-renewal. The superior court found that "[o]n May 24, 2005, the Board considered the Superintendent's recommendation and voted not to renew [her] contract for employment."

Under *Davis,* the foregoing is sufficient under the whole record test to support the Board's decision as non-arbitrary. Nothing in *Davis* suggests that an evidentiary hearing is necessary in order for the Board to carry out its duty of ascertaining a non-prohibited reason prior to making a non-renewal decision under § 115C-325(m)(2).

[5] Ms. Moore also argues that the Board's record is inadequate because it shows that the superintendent failed to "recommend" her non-renewal, pointing to the fact that the non-renewal recommenda-

MOORE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[185 N.C. App. 566 (2007)]

tion was signed by Charles Head, the school administration's Employee Relations Specialist, and not the superintendent. Although the letter was signed by Mr. Head, it states that "[t]he *Superintendent* believes the continued employment of Ms. Moore would pose a threat to the physical safety of students or personnel or that the person [sic] has demonstrated that he or she does not have sufficient integrity, ethics or other traits to fulfill his or her duties as a public school employee." (Emphasis added.) In the very next sentence, the letter states: "*We* request that Ms. Alicia Moore not be recommended for career status." (Emphasis added.) This language sufficiently resolves any doubt that the superintendent in fact made the non-renewal recommendation. Ms. Moore points to no authority that would require the superintendent to personally sign the non-renewal recommendation letter, and, accordingly, we decline to impose any such requirement in this case.

## Conclusion

In sum, we hold that, although § 115C-325(n) allows non-renewed probationary teachers "the right to appeal from the decision of the board to the superior court," there is no right—express or implied—to have a preliminary hearing before the Board on the issue of non-renewal. While Ms. Moore presents a reasonable argument that some type of hearing would provide for more meaningful review, such arguments must be presented to the General Assembly or individual Boards of Education. We are in no position to disturb the General Assembly's policy judgment.

Moreover, we hold that the superior court committed no error in striking Ms. Moore's extra-record submissions, given that the court's inquiry is limited to the evidence presented to the school board. We also have reviewed the full record considered by the superior court and conclude that this record reveals a non-prohibited reason for Ms. Moore's loss of her teaching contract. The order of the superior court is, therefore, affirmed.

Affirmed.

Judges TYSON and ELMORE concur.