RUFUS C. TAYLOR v. MARGARET J. CRISP, ROY PAYNE, GLEN THOMAS, W. E. MITCHELL, AND FRANK BURNETT, AS MEMBERS OF THE SWAIN COUNTY BOARD OF EDUCATION, AND THE SWAIN COUNTY BOARD OF EDUCATION

No. 7430SC52

(Filed 1 May 1974)

Schools § 13— teachers — consideration for career status — recommendation of superintendent

Where plaintiff had been employed since 1966 as principal of a county school and served in that capacity during the 1972-1973 school year, plaintiff was a probationary teacher who was ready for immediate consideration for career status, and the county board of education had authority to refuse to renew plaintiff's contract for the 1973-1974 school year without a recommendation to that effect by the superintendent of the county schools. G.S. 115-142(c).

APPEAL by defendants from *Thornburg, Judge,* judgments entered 17 July 1973, Session of Superior Court held in HAY-

WOOD County, and 16 August 1973, Session of Superior Court held in SWAIN County.

This is an action brought by plaintiff, who was principal of the Bryson City Elementary School, seeking an injunction to require the Board of Education of Swain County to renew his contract as school principal for the 1973-1974 academic year.

From the stipulation entered into by the parties it appears that plaintiff was employed in 1966 as principal of the Bryson City Elementary School in Swain County. He served in this capacity through the 1972-1973 school year. At a regular meeting of the Swain County Board of Education on 9 April 1973, Thomas Woodard, the Swain County Superintendent of Schools, recommended that the contract of the plaintiff be renewed for 1973-1974. The Board of Education rejected the superintendent's recommendation, and by a majority vote refused to renew the plaintiff's contract.

Plaintiff brought this action against the Board of Education and its members contending that under G.S. 115-142 the Board had no authority to ignore the superintendent's recommendation and refuse to renew his contract. The case was heard upon motion for summary judgment filed by plaintiff.

The trial court ruled that the Board of Education could not refuse to renew the contract of plaintiff without a recommendation to that effect from the superintendent of the Swain County schools. Judgment was entered which ordered the Swain County Board of Education to renew the contract of the plaintiff as principal of the Bryson City Elementary School in Swain County for the 1973-1974 school year. From this judgment defendants have appealed.

*Adams, Hendon & Carson, by Philip G. Carson and Herbert L. Hyde, for plaintiff appellee.*

*Coward, Coward & Jones, by Roger L. Dillard, Jr., for defendant appellants.*

BALEY, Judge.

The legal question for determination by this Court is whether the Swain County Board of Education had the authority under the provisions of G.S. 115-142 to refuse to re-employ the plaintiff and renew his teaching contract for the

academic year 1973-1974. The answer to this question involves the interpretation of Chapter 883, Session Laws of North Carolina, 1971, which completely rewrote the state statutes governing the dismissal and rehiring of teachers. Chapter 883 (codified as General Statutes 115-142) became effective 1 July 1972 and was in effect on 9 April 1973 when the Board refused to renew the plaintiff's contract.

A statute should always be construed in accordance with the legislative intent. *State v. Johnson,* 278 N.C. 126, 179 S.E. 2d 371; *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2; *Powell v. State Retirement System,* 3 N.C. App. 39, 164 S.E. 2d 80. In determining the legislative intent, "parts of the same statute . . . dealing with the same subject, are to be considered and interpreted as a whole and in such case it is the accepted principle of statutory construction that every part of the law shall be given effect if this can be done by any fair and reasonable intendment. . . . " *State v. Barksdale,* 181 N.C. 621, 625, 107 S.E. 505, 507; *accord, State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706; *In re Hickerson,* 235 N.C. 716, 71 S.E. 2d 129; *Walker v. Bakeries Co.,* 234 N.C. 440, 67 S.E. 2d 459. The courts may appropriately take into account the circumstances under which the statute was enacted and the conditions it was designed to correct. *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548; *Board of Education v. Mann,* 250 N.C. 493, 109 S.E. 2d 175; *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797.

Prior to the passage of Chapter 883 the contracts of public school teachers were terminable at the end of each school year. A county board of education had full authority to refuse to renew a teacher's contract for any reason it considered appropriate. *See Still v. Lance,* 279 N.C. 254, 182 S.E. 2d 403.

Tenure in employment has long been a laudable objective of the teaching profession, and Chapter 883 provides teachers with much greater security than they have heretofore had. It classifies all teachers into two groups: career teachers and probationary teachers. They are defined as:

"(5) 'Career teacher' means any teacher who has been regularly employed by a public school system for a period of not less than three successive years and who has been reemployed by a majority vote of the board of such public school system for the next succeeding school year.

"(6) 'Probationary teacher' means any teacher em-
ployed by a public school system who is not a career
teacher."

A career teacher may not be dismissed except upon certain speci-
fied grounds. G.S. 115-142(e)(1). The procedure for dismissal
requires the recommendation of the superintendent and makes
provision for an investigation by a "professional review com-
mittee" created by statute, G.S. 115-142(g),(i). The career
teacher is entitled to a hearing before the board of education
and has a right of appeal to the superior court.

Since the statute does confer upon career teachers additional
security in their employment, it does *not* grant instant career
status to all teachers presently employed but provides appropri-
ate methods through which a teacher may acquire career status.
In this case, even though plaintiff had been serving as principal
of the Bryson City school since 1966, he was not a career teacher
within the meaning of the statute when considered for reemploy-
ment on 9 April 1973. All teachers when considered for re-
employment "for the next succeeding school year" were
*probationary* teachers.

There are two sections of Chapter 883 which relate to
the dismissal and rehiring of probationary teachers. The first
section amended G.S. 115-142(c) to provide:

"(c) Election of career teachers. After a teacher has
been employed by the same public school system in this
State for a period of three consecutive years, the board of
that system is required to vote upon that teacher's employ-
ment for the next succeeding year. If a majority of the
board votes to reemploy the teacher, he or she becomes a
career teacher. If a majority of the board votes against
reemployment of the teacher, the teacher remains a pro-
bationary teacher whose rights are set forth in G.S.
115-142(M)(2). If the board fails to vote, but reemploys
the teacher for the next successive year, then the teacher
automatically becomes a career teacher. All teachers em-
ployed by a public school system of this State at the time
this act takes effect who, at the end of the last school
year, will either have been employed by that school system
(or a successor system if the system has been consolidated)
for a total of four consecutive years or will have been
employed by a public school system of this State for a

total of five consecutive years shall automatically be career teachers if employed for a second year following the effective date of this act. All other teachers employed by a public school system of this State at the time this act takes effect shall be probationary teachers."

Subsection (c) concerns the election of a probationary teacher to career status after the eligibility period of service is met. This section clearly requires a vote of the board of education upon the employment of the teacher for the next school year. It does not provide for any recommendation or participation of the superintendent in this action.

The second section relating to dismissal or rehiring of a probationary teacher is G.S. 115-142(m)(2) which reads:

"The board, upon recommendation of the superintendent, may refuse to renew the contract of any probationary teacher or to reemploy any teacher who is not under contract for any cause it deems sufficient; provided, however, that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons."

This section concerns the renewal of a contract of a probationary teacher without reference to career status and does involve the recommendation of the superintendent. It is applicable to those teachers who are serving the first and second years of their probationary period when they are not then eligible to be considered for career status.

The plaintiff was a probationary teacher who was ready for immediate consideration for career status. Under subsection (c) a teacher like plaintiff who had taught for more than three years prior to 1972-1973 and was teaching during the 1972-1973 school year was to be treated the same way as a teacher completing his third year in 1972-1973. Such a teacher would be voted on by the Board of Education at the end of the 1972-1973 school year and, if rehired for 1973-1974, would then become a career teacher. This was the plaintiff's case. He was not a probationary teacher under subsection (m)(2), which appears to be the section upon which the trial court based its ruling, but a probationary teacher being considered for career status. The subsection applicable to him is G.S. 115-142(c). Under this section the Board of Education shall vote upon the continued employment of a probationary teacher when such reemployment has the effect of granting career status. This is not simply a

matter of renewing the contract of a probationary teacher who will again be considered before being granted career status. Here the Board of Education is reaching a decision which confers career status, and the legislature has determined under subsection (c) that this decision shall be made by the elected board, which has ultimate "control and supervision of all matters pertaining to the public schools." G.S. 115-27.

While this case is governed by G.S. 115-142(c) as effective on 9 April 1973, it is not amiss to point out that Chapter 782, Session Laws of North Carolina, 1973, effective 23 May 1973, which amended this section, clarified the legislative intent by providing specifically:

"(1) Status of teachers employed on July 1, 1972. No teacher may become a career teacher before July 1, 1973."

and in

"(2) Normal election of a teacher to career status. . . .

"If a majority of the board votes against reemploying the teacher, he shall not teach beyond the current school term."

We do not reach the question of whether or not a probationary teacher not eligible for tenure may be dismissed at the end of the first or second year of service only if the superintendent recommends dismissal, and the Board accepts such recommendation. This involves an interpretation of subsection (m)(2) which is not here applicable.

Under subsection (c) the Swain County Board of Education did have the power on 9 April 1973 to refuse to renew plaintiff's contract. This was the year when the Board was required to determine whether he should be given tenure. If he were rehired, he would become a career teacher. The Board was not required to consider the recommendation of superintendent Woodard that plaintiff be rehired, but was free to refuse to rehire him as it chose.

The judgment of the Superior Court is reversed.

Reversed.

Chief Judge BROCK and Judge PARKER concur.