**JOYNER v. PERQUIMANS CNTY. BD. OF EDUC.**

[231 N.C. App. 358 (2013)]

VANESSA B. JOYNER, Petitioner

v.

PERQUIMANS COUNTY BOARD OF EDUCATION; A/K/A SCHOOL DISTRICT OF
PERQUIMANS COUNTY NORTH CAROLINA, Respondent

No. COA13-446

Filed 17 December 2013

1. **Schools and Education—teacher—denial of career status—right to seek judicial review**

    A probationary teacher who has been denied career status had the right to seek judicial review of the board of education's decision in accordance with the standards set forth in N.C.G.S. § 150B-51.

2. **Schools and Education—teacher—denial of tenure—judicial review—whole record test**

    The superior court was correct in applying the "whole record test" in reviewing a board of education decision to deny a teacher career status (tenure). The appeal concerned whether the record evidence supported the board's decision and whether the board's decision was arbitrary or capricious.

3. **Schools and Education—teacher—denial of tenure—arbitrary**

    The superior court properly reversed a board of education's decision to deny tenure to a teacher where there was not a rational basis in the record for the board's decision. The teacher's evaluations were replete with statements extolling her performance, while any signs or indicia of negative performance were far more difficult to glean from the record, aside from vague and unsubstantiated concerns from a board member with a possible conflict of interest who was not present at the hearing that followed the denial of tenure.

    Appeal by Respondent from order entered 16 November 2012 by Judge William R. Pittman in Perquimans County Superior Court. Heard in the Court of Appeals 10 September 2013.

    *The Leon Law Firm, P.C., by Mary-Ann Leon, for Petitioner.*

    *Tharrington Smith, L.L.P., by Deborah R. Stagner, and Hornthal, Riley, Ellis & Maland, L.L.P., by John D. Leidy, for Respondent.*

DILLON, Judge.

**JOYNER v. PERQUIMANS CNTY. BD. OF EDUC.**

[231 N.C. App. 358 (2013)]

The Perquimans County Board of Education (the Board) appeals from an order of the superior court reversing the Board's decision to deny Vanessa B. Joyner (Petitioner) career status. For the following reasons, we affirm.

## I. Factual & Procedural Background

In August 2008, Petitioner was employed by the Board to teach first grade at Perquimans Central School (PCS). After teaching first grade for two years, Petitioner spent the following two years as an Exceptional Children's (EC) teacher. Petitioner became eligible for "career status," i.e., tenure, at the close of the 2011-2012 school year. N.C. Gen. Stat. § 115C-325(c)(1) (2011).

### A. The Board's Closed Session Meeting

On 14 May 2012, the Board met in a closed session to determine whether to grant career status to Petitioner and twelve other eligible probationary teachers, each of whom had received positive recommendations from Perquimans County Superintendent of Schools Dr. Dwayne Stallings. The minutes from the meeting are included in the record.

Aside from one question concerning one other candidate, the Board focused its discussion on Petitioner. Board member Ralph Hollowell stated that "he had heard from teachers, teacher assistants, parents and grandparents questionable information about [Petitioner]" and that "from the accounts he had heard, he was not sure if EC students at [PCS] were getting what they needed." Mr. Hollowell did not elaborate further with respect to his sources or the nature of the "questionable information" that he had heard. He also described an incident in which he "substituted" at PCS for three days, during which time he observed Petitioner meet with three students, individually, for less than ten minutes each, and thus he "questioned the quality of services the students were receiving in such a short length of time." The minutes do not reflect that Mr. Hollowell cited any basis for his belief that Petitioner's meetings were inadequate or that he has any background or training in EC education upon which to base such a belief. Further, the minutes do not reflect that Mr. Hollowell notified anyone at PCS of his concerns about Petitioner's meetings with her students at the time of his observations.

The Board spoke with Superintendent Stallings, current PCS Principal Melissa Fields, and former PCS Principal Linda White concerning Petitioner, as discussed further *infra*. At the conclusion of the meeting, the Board voted to grant career status to all the candidates, except Petitioner.

## B. The Board Hearing

By letter dated 15 May 2012, Superintendent Stallings notified Petitioner of the Board's decision to deny her career status. Consequently, Petitioner would no longer be employed as a teacher at PCS beyond the end of the current academic year.[1]

Upon receiving notice that her contract would not be renewed, Petitioner requested a formal hearing before the Board. The Board granted Petitioner's request, and a hearing on the matter was held on 29 May 2012. Mr. Hollowell was not present at the hearing.

Petitioner advocated on her own behalf at the hearing, citing the many positive evaluations that she had received while at PCS, in addition to the favorable recommendations of Superintendent Stallings and Principal Fields. Petitioner questioned the motive of Mr. Hollowell's opposition to granting her career status. She described the incident in which Mr. Hollowell had "substituted" at PCS and "observed" her teaching performance for several days. Petitioner explained that this incident occurred, coincidentally, shortly after she had reported Mr. Hollowell's wife, who was also a teacher at PCS, "for misadministration of the third nine weeks writing test." Petitioner then responded to a number of questions from the Board and, finally, from the Board's attorney.

By letter dated 1 June 2012, the Board informed Petitioner that she would not be granted career status. Attached to the letter was a copy of the Board's final decision, which included the following findings:

1. The Board has concerns about [Petitioner's] performance; and

2. The Board can and should find a teacher to do a better job than [Petitioner].

Petitioner timely petitioned for judicial review of the Board's decision in Perquimans County Superior Court.

## C. Judicial Review of the Board's Decision

The superior court heard the matter on 5 November 2012, and, upon considering the parties' arguments and conducting a review of the whole record of the Board proceedings, the court entered an order reversing the Board's decision and ordering that Petitioner "be immediately reinstated to her teaching position as a career status teacher with all of the

---

1. N.C. Gen. Stat. § 115C-325 (c)(1) provides that "[i]f a majority of the board votes against granting career status, the teacher shall not teach beyond the current school term."

rights and benefits that would have accrued to her as of May 29, 2012." The superior court included detailed findings of fact in its order, including the following findings concerning Mr. Hollowell:

> 5. Board member [Hollowell] spoke against the Superintendent's recommendation that the Petitioner be given career status.
>
> 6. Hollowell said that he had "heard from teachers, teaching assistants, parents and grandparents questionable information about this teacher" without individually identifying any person from whom he had heard or providing any other specific details about what "questionable information" he claimed to have received.
>
> . . . .
>
> 9. Board member Hollowell, whose wife is a teacher at the same school as Petitioner, reported that he had personally "substituted" at Petitioner's school, and had timed [Petitioner] walking students from their regular classrooms to her classroom on three occasions.
>
> 10. Without any apparent information about the purpose of these interactions or the educational or scientific basis for his conclusions, Hollowell apparently concluded from these "observations" that Petitioner was not providing quality services to the students based upon the "short length of time" Petitioner spent with the observed students.
>
> . . . .
>
> 19. The [Board] hearing was held on 29 March 2012. Hollowell was not present. . . .

The court then concluded as a matter of law that Mr. Hollowell's "bias" had "tainted" the Board's decision:

> 4. While one might argue that the spouse of a teacher who himself "substitutes" in the same school has an inherent and overriding conflict of interest which should preclude service on the school board altogether, such conflict of interest is more noticeable in matters of teacher retention.
>
> 5. Matters of teacher retention at the same school Hollowell's spouse worked, where Hollowell "substituted", where Hollowell specifically made untrained,

unscientific "observations" of the teacher in question, where the teacher in question had reported to the principal an allegation of Hollowell's spouse's misadministration of a test make Hollowell's conflict of interest and bias impossible to ignore.

6. In view of the whole record, Hollowell had a conflict of interest and was biased against Petitioner.

7. The "evidence" which supports the Board's May 14 decision, essentially unsupported, undocumented hearsay presented by one biased member, was neither competent nor substantial.

8. The competent, admissible evidence at the May 14 closed session supported the recommendations of the Superintendent and others.

9. The Board's May 14 decision was arbitrary and capricious, made for personal reasons, and infected by the pre-meeting bias of one Board member.

10. The Board's May 29 decision to uphold the May 14 decision was tainted by the same bias which tainted the earlier decision.

11. The Board's May 29 decision was based upon selective evidence, much of it incompetent or inadmissible, designed to support its initial decision rather than provide a full and fair consideration of the matter.

12. The Board's May 29 decision was not supported by substantial admissible evidence.

13. The Board's May 29 decision was arbitrary and capricious, made for personal reasons, and infected by the pre-hearing of one Board member even though he was absent for the May 29 hearing.

14. The final decision of the [Board] should be reversed.

The superior court entered its order reversing the Board's decision on 16 November 2012. From this order, the Board appeals.

## II. Analysis

Prior to 1972, "the contracts of public school teachers were terminable at the end of each school year. A county board of education had full

authority to refuse to renew a teacher's contract for any reason it considered appropriate." *Taylor v. Crisp*, 21 N.C. App. 359, 361, 205 S.E.2d 102, 103 (1974). As this Court stated in *Taylor*,

> Tenure in employment has long been a laudable objective of the teaching profession, and [Chapter 115C] provides teachers with much greater security than they [had prior to 1972]. It classifies all teachers into two groups: career teachers and probationary teachers.

*Id.*

N.C. Gen. Stat. § 115C-325 provides that a "career teacher," meaning a teacher who has obtained "career status," may not be discharged or suspended other than for the reasons and by the procedures specifically set forth therein. Likewise, a "probationary teacher" may not be discharged *during a school year* except for the reasons and through the procedures applicable to career teachers. N.C. Gen. Stat. § 115C-325(m) (1) (2011). A school board may, however, refuse to renew the contract of a probationary teacher *at the end of a school year* "for any cause it deems sufficient: Provided, however, that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons." N.C. Gen. Stat. § 115C-325(m)(2) (2011). Probationary teachers facing non-renewal of their teaching contracts are not entitled to present evidence or to have a hearing before the board. *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 185 N.C. App. 566, 578, 649 S.E.2d 410, 418 (2007). Notwithstanding, a probationary teacher whose contract has not been renewed by the board may appeal the decision to the superior court. N.C. Gen. Stat. § 115C-325(n) (2011).

For a probationary teacher who is about to complete the fourth consecutive year of employment, N.C. Gen. Stat. § 115C-325(c)(1) provides that "the board . . . shall vote upon whether to grant the teacher career status." *Id.* The teacher "has a right to notice and hearing prior to the board's vote[.]" *Id.* Moreover, if the board votes not to grant a probationary teacher career status, "the teacher shall not teach beyond the current school term." *Id.* A decision by a county board of education not to grant a probationary teacher career status is subject to judicial review under N.C. Gen. Stat. § 150B-51. *Moore*, 185 N.C. App. at 572, 649 S.E.2d at 414.[2]

---

2. **[1]** The Board argues that the superior court lacks jurisdiction to review its decision to deny career status. The Board contends that "G.S. § 115C-325(n) [which provides for judicial review of a school board's decision not to renew the contract of a probationary teacher pursuant to G.S. § 115C-325(m)(2)], does not explicitly provide for a right to

In the present case, the superior court reversed the Board's decision to deny Petitioner career status. "When this Court reviews appeals from superior court either affirming or reversing the decision of an administrative agency, our scope of review is twofold, and is limited to determining: (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard." *Mayo v. N.C. State Univ.*, 168 N.C. App. 503, 507, 608 S.E.2d 116, 120 (2005).

### A. The Appropriate Standard of Review

[2] We must first determine whether the superior court applied the appropriate standard of review. *Id.* N.C. Gen. Stat. § 150B-51(b) provides that a court reviewing a "final decision" of the Board

> may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> . . . .
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b)(5)-(6) (2011). Alleged errors relating to subsections (5) and (6) of N.C. Gen. Stat. § 150B-51(b) are reviewed under the "whole record test." N.C. Gen. Stat. § 150B-51(c) (2011). The present appeal concerns (1) whether the record evidence supports the Board's decision; and (2) whether the Board's decision was arbitrary or capricious. We hold, therefore, that the superior court was correct in applying the "whole record test" in undertaking its review of the Board's decision.

---

appeal from a board of education's decision not to grant career status pursuant to G.S. § 115(c)(1)." In other words, the Board points out that "the judicial review in this matter has proceeded under the assumption that a denial of career status is the same, for purposes of the right to appeal, as a contract nonrenewal under subsection (m)(2)." However, N.C. Gen. Stat. § 115C-325(n) does not expressly prohibit a probationary teacher from seeking judicial review of a board's decision to deny career status, and we do not believe that our Legislature intended to limit a probationary teacher's ability to seek judicial review in this context. We thus conclude that a probationary teacher who has been denied career status has the right to seek judicial review of the board's decision in accordance with the standards set forth in N.C. Gen. Stat. § 150B-51.

## B. Proper Application of the "Whole Record Test"

**[3]** Having determined that the superior court applied the correct standard of review, we must next determine whether the superior court applied this standard *properly. Mayo,* 168 N.C. App. at 507, 608 S.E.2d at 120.

We have "distinguished [the whole record test] from the 'any competent evidence' test and a *de novo* review[.]" *Bennett v. Hertford County Board of Education,* 69 N.C. App. 615, 618, 317 S.E.2d 912, 915 (1984). "In applying the whole record test, the reviewing court must examine all the competent evidence of record, including evidence that detracts from the Board's conclusions, to determine whether the Board's decision has a rational basis in the evidence." *Beauchesne v. Univ. of N.C. at Chapel Hill,* 125 N.C. App. 457, 465, 481 S.E.2d 685, 691 (1997). " 'The whole record test' does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo." Baxter v. Poe,* 42 N.C. App. 404, 411, 257 S.E.2d 71, 76 (1979) (citation omitted).

Petitioner bore the burden of showing that the Board erred in its decision to deny her tenure. N.C. Gen. Stat. § 115C-44(b) (2011) (providing that "[i]n all actions brought in any court against a local board of education, the order or action of the board shall be presumed to be correct and the burden of proof shall be on the complaining party to show to the contrary"). It was thus Petitioner's burden to show that the Board's decision was arbitrary, in that it was not supported by substantial evidence, *Godfrey v. Zoning Bd. of Adjust.,* 317 N.C. 51, 60, 344 S.E.2d 272, 278 (1986), or because the reasons for the Board's decision were "without any rational basis in the record, such that a decision made thereon amount[ed] to an abuse of discretion[,]" *Abell v. Nash Cnty. Bd. of Educ.,* 71 N.C. App. 48, 52-53, 321 S.E.2d 502, 506 (1984).

Upon careful examination of the whole record, we are unable to discern a rational basis in the evidence for the Board's decision. Both Superintendent Stallings and Principal Fields recommended that Petitioner be granted career status; and Petitioner's summative evaluations consistently designated her performance as *at least* equal to that of her peers.[3] Indeed, Petitioner's evaluations are replete with statements

---

3. Petitioner received performance reviews ranging from "proficient," indicating standard performance in the evaluated area, to "accomplished" and "distinguished," indicating above standard performance, in evaluations completed by more than a dozen educational professionals, including three principals at PCS.

extolling her performance, describing her, for instance, as an "engaging" teacher and one who has made "commendable" progress at PCS.

Any signs or indicia of Petitioner's negative performance at PCS are far more difficult to glean from the record before us. At its closed session meeting, the Board questioned both Principal Fields and Linda White, a former principal at PCS, concerning Petitioner's placement on a "plan of action." Ms. White clarified that Petitioner did not have an "action plan" – which a struggling teacher might be placed on in order to improve certain areas of performance – but rather a more informal "plan of action" to address "areas of communication to parents and insubordination." Regardless, Principal Fields informed the Board that the informal plan of action had been discontinued. We note Ms. Field's statements that Petitioner had not always followed her directions, that she had not always turned in her lesson plan on time, and that she needed to work on her pedagogical skills; but we also note Principal Field's statement that Petitioner's lessons plans had improved and that Principal Fields did, in fact, recommend Petitioner for career status, a point which Principal Fields reiterated to the Board at the closed session meeting.

From what we are able to discern from the minutes taken at the Board's closed session meeting, it appears that, aside from Mr. Hollowell's vague and unsubstantiated concerns, the only reason articulated for denying Petitioner career status was that a Board member was "unsure if [Petitioner] had contributed to the growth of the EC students at [her school]." However, there is no evidence in the record from the meeting upon which the Board member could base this reason except for the opinion stated by Mr. Hollowell based on his unsubstantiated concerns. Another Board member stated that the Board should not grant tenure *if* "it was thought that the system could do better." There is no indication, however, that the Board members applied this "could do better" standard to any of the other twelve candidates for career status.

With respect to the 29 May 2012 hearing, the Board did not seek to elicit testimony from any individual other than Petitioner, who introduced evidence of her positive impact as a teacher at PCS. Mr. Hollowell's absence from the hearing rendered his vague allegations unexplained and precluded Petitioner from questioning Mr. Hollowell directly to counter his "concerns" with her side of the story.

The Board insists that its decision to deny Petitioner tenure was "amply supported by evidence in the record." Because Mr. Hollowell lacks a basis in knowledge and educational training, his remarks do not constitute substantial evidence supporting the Board's decision. Further,

we do not believe the other evidence in record which might support the Board's decision – *e.g.*, testimony that Petitioner had not always turned her lessons in on time – in light of the overwhelming evidence favorable to Petitioner, constitutes substantial evidence to support the Board's decision. *See ACT-UP, Inc. v. Comm'n for Health Servs.*, 345 N.C. 699, 707-08, 483 S.E.2d 388, 393 (1997). As such, we do not believe that the superior court erred by concluding that, in view of the whole record, the Board's decision lacks a rational basis in the evidence. *See id.*

The Board also points to the findings included in its written decision, which, according to the Board, "explains the basis for" its decision. Though we have held, as the Board points out, that "a school board need not 'make exhaustive inquiries or formal findings of fact," *Davis v. Macon Cnty. Bd. of Educ.*, 178 N.C. App. 646, 655, 632 S.E.2d 590, 596 (2006) (quoting *Abell v. Nash Cnty. Bd. of Educ.*, 71 N.C. App. 48, 53, 321 S.E.2d 502, 506 (1984)), the underlying notion is that such findings are not necessary because "the personnel file, board minutes or recommendation memoranda, *should disclose the basis for the board's action.*" *Davis*, 178 N.C. App. at 656, 632 S.E.2d at 596 (2006) (quoting *Abell*, 71 N.C. App. at 53, 321 S.E.2d at 506-07) (emphasis added). However, given that the record fails to disclose a rational basis for the Board's decision in the present case, the scant nature of the Board's two findings – that the Board had "concerns" about Petitioner's performance and that the Board could find a teacher "to do a better job" than Petitioner – serve only to bolster the superior court's conclusion that the Board's decision was arbitrary and capricious. To accept the Board's "findings" as explaining a valid basis for its decision – or, put another way, as indicative of the standard for attaining tenure status, without being accompanied by an articulation of a specific concern supported by substantial evidence in the record – would be to grant the Board unfettered discretion to act arbitrarily toward a particular candidate, as there will always be some candidate, somewhere, who could "do a better job." Thus, while we acknowledge that the Board is to be accorded broad discretion in deciding whether career status is appropriate for a given candidate, we cannot ignore the limitations placed on this discretion by our General Statutes, which, as relevant for purposes of the present case, expressly provide that arbitrary decisions or decisions not supported by substantial admissible evidence, in view of the entire record, will not be upheld. N.C. Gen. Stat. § 150B-51(b)(5)-(6).

### III. Conclusion

The superior court properly applied the appropriate standard of review in determining that the Board's decision lacked a rational basis

in the evidence. Further, the superior court acted within its authority pursuant to N.C. Gen. Stat. § 150B-51 when it "modified" the Board's decision by directing that Petitioner be reinstated with career status. Accordingly, we affirm the superior court's 16 November 2012 order.

AFFIRMED.

Judge McGEE and Judge McCULLOUGH concur.