BRYANT, Judge.
 

 *740
 
 Where the trial court's decision following review of a school board's termination of a teacher's employment was supported by substantial evidence and was not arbitrary or capricious, and where the decision was made upon lawful procedures and was not affected by other error of law, we affirm.
 

 On 6 October 2014, respondent, Nash-Rocky Mount Board of Education ("respondent-Board"), hired Kimarlo Ragland, petitioner, as a math teacher at Tar River Academy, respondent-Board's alternative school. On 17 October 2014, less than two weeks after starting work, petitioner had a confrontation with a student ("M"). M had been making threats to another student in the classroom, and petitioner was escorting
 
 *741
 
 M to the in-school suspension office. Once in the hallway, petitioner and M exchanged remarks; M became angry, dropped his books, and told petitioner that petitioner "[was] not going to keep talking to [him] like th[at]." Petitioner retreated to his classroom and locked the door. M hit and kicked the door, attempting to get into the classroom. M eventually broke the glass panels of the door, cutting himself and bleeding profusely. A teacher from the classroom across the hall, Charman Pearson, came over and placed herself between M and the door.
 
 *425
 
 During this time, petitioner remained in the classroom but stripped off his shirt as though preparing for a fight. Students within the classroom were out of their seats and moving around as petitioner paced shirtless near the door. A female student ("S.B."), told petitioner to put his shirt on or he would get fired. Petitioner did not respond to S.B., but he did put his shirt back on. Although there was a phone in the classroom, at no time during the incident did petitioner attempt to notify the school administration or otherwise obtain assistance. The school's administrative office was ultimately notified of the incident by students from another classroom. The injured student, M, was escorted away by the school resource officer.
 

 Later, the school principal John Milliner-Williams, obtained written statements from students. Principal Williams then had the students removed from the classroom and he reviewed the statements. He also spoke to some of the students who were in the classroom and learned that another student, S.B., had made a cell phone video recording of the incident. Principal Williams then talked to petitioner. When asked why he had removed his shirt, petitioner stated that he was preparing for combat and thought that he would have to defend himself. As a result of petitioner's handling of the incident, Principal Williams issued a written letter to petitioner reprimanding him for his bad judgment, failure to follow standard procedures, failure to call for assistance, and "complete lack of concern for the safety of [his] students or the adherence to school and district guidelines."
 

 On the next school day, Monday, 20 October 2014, petitioner approached S.B., stroked her hair and told her that he had been "thinking about [her] the whole weekend, how [she] tried to help [him] save [his] job." At the end of the class period, as S.B. was leaving, petitioner asked her why she had told him to put his shirt back on and asked, "[y]ou didn't want to see my muscles?" In her next class, S.B. shared with Ms. Pearson that she was uncomfortable and did not want to go back to petitioner's class. Ms. Pearson referred S.B. to administration, where she met with Principal Williams. S.B. was visibly shaken and looked as
 
 *742
 
 if she had been crying. In her statement to Principal Williams and later at the hearing before respondent-Board, S.B. said that petitioner's comments and his touching her made her "uncomfortable," and she " felt his [comments were] out of line."
 

 That same day, Principal Williams called petitioner into his office to question him about his conduct. Petitioner admitted that he had touched S.B.'s hair, but did not seem to think he had done anything wrong by stroking her hair and making the statements he had made. The combination of the two incidents that day (Monday) and the previous Friday led Principal Williams to believe it would be impossible for petitioner to be an effective educator at Tar River Academy. Principal Williams informed the superintendent, Dr. Anthony Jackson, of petitioner's actions, and the superintendent met with petitioner on 22 October 2014 in order to allow him an opportunity to respond to the allegations against him. Dr. Jackson testified that he was concerned about the lack of judgment petitioner had shown in such a short time. After the meeting, Dr. Jackson suspended petitioner with pay effective immediately. Dr. Jackson then recommended petitioner's dismissal by written letter dated 25 November 2014.
 

 Petitioner appealed Dr. Jackson's dismissal recommendation to respondent-Board, which conducted a hearing that lasted over three hours on 8 January 2015. Three students, including S.B., along with Ms. Pearson, Principal Williams, and Dr. Jackson, testified at the hearing. Respondent-Board viewed the video recording. Respondent-Board also received documentary evidence from both the superintendent, Dr. Jackson, and petitioner. The documentary evidence included,
 
 inter alia,
 
 copies of petitioner's written reprimand, the dismissal letter, students' handwritten statements regarding the incident, copies of pertinent statutes ( N.C.G.S. §§ 115C-325.4, -325.6, -325.7), and applicable pages from the Nash-Rocky Mount Board of Education Policy Manual.
 

 Following the hearing, respondent-Board voted to terminate petitioner based on grounds of inadequate performance, neglect
 
 *426
 
 of duty, failure to comply with such reasonable requirements as respondent-Board may prescribe, and failure to fulfill the duties and responsibilities imposed upon teachers by state law. On 12 January 2015, respondent-Board notified petitioner in writing of its decision to dismiss him from his position as a teacher on the grounds listed above. Petitioner filed a "Petition for Judicial Review and Notice of Appeal" and later an Amended Petition in the Superior Court. Petitioner asserted that he was seeking review of respondent-Board's decision pursuant to N.C. Gen.Stat. §§ 150B-45 and 115C-325.8.
 
 *743
 
 Respondent-Board timely filed in the Superior Court the Administrative Record from petitioner's 8 January 2015 dismissal hearing before respondent-Board. Respondent-Board also filed a Response to the Petition for Judicial Review pursuant to N.C. Gen.Stat. § 150B-46.
 

 Meanwhile, petitioner filed a Motion to Enter Default, a Motion for Judgment by Default, a Motion for Summary Judgment, and later a revised Motion for Summary Judgment. Petitioner noticed these three motions for hearing on 13 April 2015, and respondent-Board subsequently filed a Notice of Hearing on the Petition.
 

 On 13 April 2015, the case came on for hearing before the Honorable Alma Hinton, Superior Court Judge presiding. By order entered 15 April 2015, Judge Hinton denied petitioner's three motions, dismissed the Petition for Judicial Review, and affirmed respondent-Board's decision dismissing petitioner from his position as a teacher. Petitioner timely filed Notice of Appeal to this Court.
 

 _________________________
 

 Petitioner's Motion to Strike the Video Recording
 

 The Record on Appeal was deemed settled by operation of Rule 11(c) of the North Carolina Rules of Appellate Procedure. Included in the Record on Appeal filed with the Clerk of the Court of Appeals was a "CD of video evidence filed pursuant to Rule 9(d)" ("video recording"). Petitioner filed a Motion to Strike the video recording, arguing,
 
 inter alia,
 
 that the trial court did not view or examine the recording, and therefore, it is not properly before this Court. Thereafter, respondent-Board filed a response to petitioner's Motion to Strike.
 

 "Pursuant to the North Carolina Rules of Appellate Procedure, our review is limited to the record on appeal ...
 
 and any other items filed with the record in accordance with Rule 9(c) and 9(d).
 
 "
 
 N.C. Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co., Inc.,
 

 202 N.C.App. 334
 
 , 337,
 
 688 S.E.2d 534
 
 , 536 (2010) (emphasis added) (quoting
 
 Kerr v. Long,
 

 189 N.C.App. 331
 
 , 334,
 
 657 S.E.2d 920
 
 , 922 (2008) ). Rule 9(d) states in relevant part:
 

 Any exhibit filed, served, submitted for consideration, admitted, or made the subject of an offer of proof may be made a part of the record on appeal if a party believes that its inclusion is necessary to understand an issue on appeal.
 

 ...
 

 *744
 
 (2) Exhibits Not Included in the Printed Record on Appeal. A documentary exhibit that is not included in the printed record on appeal can be made a part of the record on appeal by filing three copies with the clerk of the appellate court.
 

 N.C. R.App. P. 9(d)(2) (2014).
 

 Here, the CD video recording was part of the Administrative Record, which was filed by respondent-Board pursuant to N.C. Gen.Stat. § 150B-47 for review by the trial court and filed with this Court pursuant to Rule 9(d)(2). Petitioner concedes that the CD video recording is part of the administrative record. Because the CD was part of the Administrative Record, which in turn was before and reviewed by the trial court, it is properly a part of the record here.
 
 See
 

 Batch v. Town of Chapel Hill,
 

 326 N.C. 1
 
 , 12,
 
 387 S.E.2d 655
 
 , 662 (1990) (making "an examination of the administrative record which was correctly before the trial court on review"). Accordingly, petitioner's Motion to Strike the CD video recording is denied.
 

 _________________________
 

 On appeal, petitioner asserts the following arguments (condensed for purposes of clarity and ease of reading): (I) the trial court erred in committing various errors of law and procedure
 
 *427
 
 in hearing and deciding the petition; and (II) respondent-Board's decision to terminate petitioner's employment was not supported by substantial evidence in the record, was arbitrary or capricious, and was made upon unlawful procedures or affected by other error of law.
 

 This case arises from a judicial review of respondent-Board's decision to terminate petitioner's employment as a teacher with the Tar River Academy. A superior court sitting in review of a local school board's decision to dismiss a teacher may reverse the school board's decision if it determines that the decision:
 

 (1) Is in violation of constitutional provisions.
 

 (2) Is in excess of the statutory authority or jurisdiction of the board.
 

 (3) Was made upon unlawful procedure.
 

 (4) Is affected by other error of law.
 

 (5) Is unsupported by substantial evidence in view of the entire record as submitted.
 

 *745
 
 (6) Is arbitrary or capricious.
 

 N.C. Gen.Stat. § 115C-325.8 (2015).
 

 The language of N.C. Gen.Stat. § 115C-325.8 is nearly identical to the language set forth in N.C. Gen.Stat. § 150B-51(b) of the Administrative Procedure Act ("APA").
 
 [1]
 
 Prior to the adoption of N.C. Gen.Stat. § 115C-325.8, effective 1 July 2014, the right of appeal to superior court for a dismissed teacher was previously codified in N.C. Gen.Stat. § 115C-325(n).
 
 [2]
 
 Under N.C. Gen.Stat. § 115C-325(n), North Carolina's appellate courts consistently applied the standards for judicial review set out in N.C.G.S. § 150B-51(b) of the APA to appeals from school
 
 *746
 
 boards to the courts.
 
 See, e.g.,
 

 Moore v. Charlotte-Mecklenburg Bd. of Educ.,
 

 185 N.C.App. 566
 
 , 572,
 
 649 S.E.2d 410
 
 , 414 (2007) ("On appeal of a decision of a school board, pursuant to the amended N.C. Gen.Stat. § 115C-325(n), 'a trial court sits as an appellate court and reviews the evidence presented to the school board.' " (citation omitted));
 
 Joyner v. Perquimans Cnty. Bd. of Educ.,
 

 231 N.C.App. 358
 
 , 363-64,
 
 752 S.E.2d 517
 
 , 521 (citing to N.C.G.S. § 150B-51(b) for the standard of review where a probationary teacher whose contract had not been renewed appealed the decision pursuant to N.C.G.S. § 115C-325(n) ). Accordingly, the case law developed under the prior statutory framework of N.C.G.S. § 115C-325(n) is instructive,
 
 *428
 
 particularly where no appellate court has addressed the standard of review for N.C.G.S. § 115C-325.8 and where N.C.G.S. § 115C-325.8 is practically indistinguishable from the standard of review set forth in N.C.G.S. § 150B-51(b).
 

 In reviewing administrative proceedings like those conducted by school boards, the trial court acts as an appellate court and may not substitute its judgment for that of a school board.
 
 See, e.g.,
 

 Rector v. N.C. Sheriffs' Educ. & Training Stds. Comm'n,
 

 103 N.C.App. 527
 
 , 532,
 
 406 S.E.2d 613
 
 , 617 (1991). Further, "the substantive nature of each assignment of error dictates the standard of review."
 
 N.C. Dep't of Env't and Natural Res. v. Carroll,
 

 358 N.C. 649
 
 , 658,
 
 599 S.E.2d 888
 
 , 894 (2004) (citations omitted). "When this court reviews appeals from superior court either affirming or reversing the decision of an administrative agency, our scope of review is twofold, and is limited to determining: (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard."
 
 Mayo v. N.C. State Univ.,
 

 168 N.C.App. 503
 
 , 507,
 
 608 S.E.2d 116
 
 , 120 (2005) (citing
 
 In re Appeal by McCrary,
 

 112 N.C.App. 161
 
 , 166,
 
 435 S.E.2d 359
 
 , 363 (1993) ).
 

 De novo
 
 review applies to a petitioner's claims regarding the violation of subsections (1) through (4) of N.C.G.S. § 115C-325.8.
 
 See
 

 Carroll,
 

 358 N.C. at 659
 
 ,
 
 599 S.E.2d at 895
 
 (interpreting similar provisions of N.C.G.S. § 150B-51(b) ). "Under the
 
 de novo
 
 standard of review, the trial court considers the matter anew and freely substitutes its own
 
 *747
 
 judgment" for that of the board.
 
 Id.
 
 at 660,
 
 599 S.E.2d at 895
 
 (citation and quotation marks omitted).
 

 The remaining two grounds for violations under N.C.G.S. § 115C-325.8, claims that respondent-Board's decision was unsupported by substantial evidence (subsection (5)) or was arbitrary or capricious (subsection (6)), are subject to the whole record test.
 
 See
 

 Davis v. Macon Cnty. Bd. of Educ.,
 

 178 N.C.App. 646
 
 , 652,
 
 632 S.E.2d 590
 
 , 594 (2006). The whole record test requires a reviewing court to consider the entire record to determine whether there is "substantial evidence" to support a school board's final decision.
 
 Joyner,
 

 231 N.C.App. at 365
 
 ,
 
 752 S.E.2d at
 
 521-22 "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion."
 
 Walker v. N.C. Dep't of Human Res.,
 

 100 N.C.App. 498
 
 , 503,
 
 397 S.E.2d 350
 
 , 354 (1990) (citation omitted). "[T]he reviewing court must examine all competent evidence, including that which contradicts the agency's findings, to determine if the agency decision is possessed of a rational basis in the evidence."
 
 Beauchesne v. Univ. of N.C. at Chapel Hill,
 

 125 N.C.App. 457
 
 , 465,
 
 481 S.E.2d 685
 
 , 691 (1997) (citation omitted).
 

 In applying the whole record test, the reviewing trial court "may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter
 
 de novo.
 
 "
 
 Carroll,
 

 358 N.C. at 660
 
 ,
 
 599 S.E.2d at 895
 
 (citation omitted). The decisions of local school boards may be reversed as arbitrary or capricious only if they are "patently in bad faith, or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment."
 
 Alexander v. Cumberland Cnty. Bd. of Educ.,
 

 171 N.C.App. 649
 
 , 660,
 
 615 S.E.2d 408
 
 , 416 (2005) (citations and quotation marks omitted).
 

 Additionally, "[i]n all actions brought in any court against a local board of education, the order or action of the board shall be presumed to be correct and the burden of proof shall be on the complaining party to show the contrary." N.C. Gen.Stat. § 115C-44(b) (2015) ;
 
 see also
 

 Alexander,
 

 171 N.C.App. at 660
 
 ,
 
 615 S.E.2d at
 
 416 (citing statutory presumption of correctness in administrative review of school board decisions). The burden is on petitioner to show that the school board acted arbitrarily or capriciously.
 
 Abell v. Nash Cnty. Bd. of Educ.,
 

 89 N.C.App. 262
 
 , 265,
 
 365 S.E.2d 706
 
 , 708 (1988) (
 
 Abell II
 
 ) (citing Edward L. Winn,
 
 Teacher Nonrenewal in North Carolina,
 

 14 Wake Forest L.Rev. 739
 
 , 762 (1978)). Arbitrary or capricious reasons "are those without any rational
 
 *748
 
 basis in the rec
 
 *429
 
 ord...."
 
 Abell v. Nash Cnty. Bd. of Educ.,
 

 71 N.C.App. 48
 
 , 52,
 
 321 S.E.2d 502
 
 , 506 (1984) (
 
 Abell I
 
 ).
 

 I
 

 Petitioner first argues that the trial court's decision was made upon unlawful procedures and was affected by error of law. Specifically, petitioner contends that the trial court (1) erred and violated his rights by not "adjudicating" his subpoena; (2) improperly denied petitioner's motions to enter default, judgment by default, and for summary judgment; (3) erred in its review and resulting order because the order was not "factual in nature"; and (4) erred in hearing from respondent-Board's "impromptu" counsel at the 13 April 2015 hearing. On all points, we disagree.
 

 (1) Subpoena
 

 Once petitioner's case was before the trial court for review, petitioner sought to compel (1) the addresses of two students, as petitioner claimed the students assaulted him, and (2) the minutes of the Board's closed session deliberation following petitioner's dismissal. Respondent-Board filed a Motion to Quash Subpoena on the grounds that the subpoena (1) required disclosure of privileged or other protected matter to which no exception or waiver applied and (2) was otherwise unreasonable or oppressive. However, there is nothing in the record before this Court to indicate whether the trial court ruled on respondent-Board's Motion to Quash Subpoena. As petitioner failed to "obtain a ruling upon the ... motion," he has failed to preserve this issue for appeal. N.C. R.App. P. 10(a)(1) (2014).
 

 Nevertheless, assuming arguendo the issue is preserved for review, petitioner could not prevail. Section 115C-325.8 explicitly provides that a teacher's appeal of a dismissal "shall be decided on the administrative record." N.C.G.S. § 115C-325.8(b). In the instant case, at petitioner's dismissal hearing before respondent-Board, petitioner was permitted to subpoena witnesses, and he did so. He subpoenaed three students to testify-the female student who recorded the video, a male student who observed petitioner's exchange with S.B. where petitioner touched her hair, and another female student who was in the classroom when petitioner removed his shirt. Petitioner questioned those students, and he was also given the opportunity to present documentary evidence. Once the administrative record was closed, petitioner had no right to request additional discovery or to subpoena additional witnesses before the Superior Court. Indeed,
 

 *749
 
 when a superior court judge sits as an appellate court to review an administrative agency decision the judge is not required to make findings of fact....
 
 If the superior court judge does make findings of fact and conclusions of law, these will not be considered in our appellate review.
 

 Shepherd v. Consolidated Judicial Retirement Sys.,
 

 89 N.C.App. 560
 
 , 562,
 
 366 S.E.2d 604
 
 , 605-06 (1988) (emphasis added) (internal citations omitted). Thus, even if petitioner had obtained a ruling from the trial court on respondent-Board's Motion to Quash petitioner's subpoena, the ruling would not have been favorable to petitioner as petitioner could not have presented additional evidence to the superior court that had not been presented to respondent-Board.
 
 See id.; see also
 

 Macon Cnty. Bd. of Educ.,
 

 178 N.C.App. at 651
 
 ,
 
 632 S.E.2d at 594
 
 ("On appeal of a decision of a school board, a trial court sits as an appellate court and reviews the evidence presented to the school board." (emphasis added) (citation omitted)).
 

 Accordingly, there is no basis for petitioner's assertion that he was entitled to subpoena records or was otherwise entitled to additional discovery on appeal once the matter was before the trial court. The trial court was permitted to review respondent-Board's decision only on the administrative record before it,
 
 see
 
 N.C.G.S. § 115C-325.8(b), and thus, the trial court did not err in concluding that it was "only empowered to consider the record...."
 

 (2) Petitioner's Motions
 

 Petitioner next contends that the trial court erred in determining that his motions-Motion to Enter Default, Motion for Judgment by Default, and Motion for Summary Judgment-were inappropriate as respondent-Board's
 
 *430
 
 "answer" failed to set forth affirmative defenses and deny allegations set forth in his Petition, which petitioner considers to be a "complaint." Specifically, petitioner contends that there was "no genuine issue of any material fact" as respondent-Board failed to deny any of petitioner's allegations set forth in his petition. Thus, petitioner argues, as there was "no genuine issue of any material fact," the trial court should have granted default, default judgment, and summary judgment in favor of petitioner. Petitioner's argument is without merit.
 

 Based on his motions before the trial court and his arguments before this Court, petitioner is trying to assume the status of one who has filed a "complaint" in the superior court. However, what petitioner actually sought in the superior court was an
 
 administrative
 
 review of respondent-Board's decision. Both the Petition and the Amended
 
 *750
 
 Petition specifically state that they are brought pursuant to N.C. Gen.Stat. §§ 150B-45 and 115C-325.8. Petitioner did not file a complaint or commence a
 
 civil action
 
 under Rule 3 of the North Carolina Rules of Civil Procedure.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 3 (2015) ("A
 
 civil action
 
 is commenced by filing a complaint with the court." (emphasis added)). Thus, respondent-Board was not required to respond in accordance with the Rule of Civil Procedure applicable to a party in a civil action after service of a summons and a complaint.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 12(a)(1) (2015) ("A defendant shall serve his answer within 30 day after service of the
 
 summons and complaint
 
 against him." (emphasis added)).
 

 Indeed, the Rules of Civil Procedure "shall govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature
 
 except when a differing procedure is prescribed by statute.
 
 " N.C. Gen.Stat. § 1A-1, Rule 1 (2015) (emphasis added). Thus, "when a statute under which an administrative board has acted provides an orderly procedure for an appeal to the superior court for review of the board's action, this procedure is the exclusive means for obtaining such judicial review."
 
 Presnell v. Pell,
 

 298 N.C. 715
 
 , 722,
 
 260 S.E.2d 611
 
 , 615 (1979) (citations and quotation marks omitted). Here, N.C. Gen.Stat. § 150B-46 provides that, in response to a petition filed following administrative proceedings, "parties to the proceeding may file a response to the petition within 30 days of service. Parties, including agencies, may state exceptions to the decision or procedure and what relief is sought in the response."
 

 Id.
 

 § 150B-46 (2015).
 

 Respondent-Board responded in a timely manner to the Petition. Respondent-Board was served with a copy of the Amended Petition by certified mail on 24 February 2015 and respondent-Board filed a copy with the trial court on 25 March 2015, within thirty days after receipt of the Petition (twenty-nine days later). Respondent-Board had no duty to respond to petitioner's improper motions. Accordingly, petitioner's arguments are overruled as his motions for default and summary judgment were inappropriate and properly denied by the trial court.
 

 (3) Trial Court's Review and Order
 

 Petitioner also contends that the trial court failed to review the Petition, Administrative Record, and other materials. This contention is without merit. The Order dismissing the Petition and affirming respondent-Board's decision clearly states as follows: "The Court has reviewed the Petition and Amended Petition, the Administrative Record filed by Respondent[-Board] ... and Respondent[-Board's] Response
 
 *751
 
 ... and has considered the arguments of Petitioner and counsel for Respondent[-Board], as well as the briefs and legal authorities submitted." There is nothing in the record before this Court that would suggest the trial court neglected its duty and failed to perform the review required by law.
 
 See
 

 Moore,
 

 185 N.C.App. at 573
 
 ,
 
 649 S.E.2d at 415
 
 (noting that the appellate court's task "is essentially twofold: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.")
 

 Petitioner also argues that the trial court's order was not "factual in nature." However, when a trial court sits as an appellate court to review an administrative agency decision,
 
 *431
 
 the court is not required to make findings of fact, and if the court does make such findings, they may be disregarded on appellate review.
 
 See id.;
 

 Shepherd,
 

 89 N.C.App. at 562
 
 ,
 
 366 S.E.2d at 605-06
 
 (1988) ;
 
 see also
 

 Area Mental Health Auth. v. Speed,
 

 69 N.C.App. 247
 
 , 250,
 
 317 S.E.2d 22
 
 , 25 (1984) (noting that "it is unnecessary for a trial judge who reviews administrative action ... to explain the reasons for his decision to affirm such action"). We find nothing in the record to suggest the trial court erred in its review of the administrative record or in its order. Accordingly, petitioner's argument is overruled.
 

 (4) Respondent's Counsel at the 13 April 2015 Hearing
 

 Petitioner also argues that the trial court erred in allowing "impromptu" counsel for respondent-Board and contends that he was prejudiced by the fact that respondent-Board was represented by a different attorney, albeit from the same law firm, at the 13 April 2015 hearing. The record, however, establishes that counsel filed a Notice of Appearance and properly served petitioner with the notice in advance of the hearing. Petitioner cites to no authority to support his argument that respondent-Board's counsel was not properly before the court, nor does he put forth any basis for his claim of prejudice other than accusations that the change in attorneys was made in order to personally attack petitioner. This argument, which is wholly without merit and is not supported by the record, is overruled.
 

 II
 

 In petitioner's next argument, he contends that the trial court's order affirming respondent-Board's decision to terminate petitioner's employment was in error as respondent-Board's decision was not supported by substantial evidence in the record and was arbitrary and capricious; that respondent-Board's decision was based on improper evidence; that respondent-Board was required to make findings of fact; and that
 
 *752
 
 respondent-Board's decision was unconstitutional and otherwise made upon improper procedures or affected by error of law. We disagree.
 

 Petitioner challenges the evidence relied upon to sustain his termination based on "inadequate performance" and "neglect of duty" as insufficient.
 

 It is well settled that the credibility of witnesses and the probative value of particular testimony are for the administrative body to determine, and it may accept or reject in whole or in part the testimony of any witness. While an administrative body must consider all of the evidence and may not disregard credible undisputed evidence, it is not required to accept particular testimony as true.
 

 State ex rel. Utils. Comm'n v. Duke Power Co.,
 

 305 N.C. 1
 
 , 21,
 
 287 S.E.2d 786
 
 , 798 (1982) (citation omitted). Moreover, "it is the responsibility of the administrative agency," here respondent-Board, "to determine the weight and sufficiency of the evidence and the credibility of witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence."
 
 See
 

 Watkins v. N.C. State Bd. of Dental Exam'rs,
 

 358 N.C. 190
 
 , 202,
 
 593 S.E.2d 764
 
 , 771 (2004) (citation and quotation marks omitted).
 

 During the hearing held on 8 January 2015, respondent-Board heard testimony from a female student S.B. and two other students, Ms. Pearson, Principal Williams, and Superintendent Anthony Jackson. Respondent-Board reviewed the video recording of the 17 October 2015 incident, considered the handwritten statements and other documentary evidence presented by both petitioner and the superintendent, and heard petitioner's statements and arguments. The evidence, which petitioner argues is not substantial and, therefore, cannot support respondent-Board's dismissal of petitioner, is summarized below.
 

 Petitioner does not dispute the essential facts, he only challenges the conclusions to be drawn therefrom. Petitioner has never denied that during a situation with an out-of-control student, he removed his shirt and prepared for a physical confrontation. Instead of calling a school administrator, the school resource officer, or other assistance, petitioner became agitated, stripped to his
 
 *432
 
 bare torso, and "prepared for combat." Meanwhile, another teacher, Ms. Pearson, placed herself between the door and the violent student, trying to calm him down, while also entreating petitioner to please call "downstairs" for assistance. Ultimately, another student contacted the main office and summoned help.
 
 *753
 
 Ms. Pearson testified that on 17 October 2015 there was no order in petitioner's classroom during the incident and that it is a teacher's "responsibility to keep order in a classroom at all points in time." Principal Williams testified as follows:
 

 Based on the statements I had from the students and my conversation with [petitioner], I had determined that he had not acted in the best interests of the students, which is always our primary objective. He didn't call the front office when-when the incident occurred. And I just felt like him preparing for combat instead of mitigating the circumstances, he was actually adding to the situation at that time.
 

 Following the incident with the violent student and petitioner's removal of his shirt in the classroom on 17 October 2014, the following Monday, petitioner approached a female student S.B., stroked her hair, and told her that he had been thinking about her over the weekend. Petitioner also asked S.B., "[y]ou didn't want to see my muscles?" When questioned by Principal Williams, petitioner never denied this conduct but instead claimed he was being "friendly" towards S.B.
 

 S.B. was extremely upset by petitioner's actions towards her, testifying that he had made her uncomfortable. Principal Williams testified that he was concerned that petitioner did not seem to think he had done anything wrong and he further felt that he could not risk petitioner possibly engaging in other inappropriate behavior with students.
 

 Superintendent Jackson also testified regarding the applicable policies that petitioner had failed to follow, including the Board's policy against sexual harassment. The Board also considered the North Carolina State Board of Education policy outlining the Code of Ethics for professional educators.
 

 Reviewing the entire record, there is substantial evidence to support respondent-Board's decision to terminate petitioner's employment as a teacher for neglect of duty, inadequate performance, failure to fulfill the duties and responsibilities imposed upon teachers by state law, and failure to comply with reasonable requirements prescribed by the Board, any of which, standing alone, would be sufficient to support respondent-Board's decision.
 
 See
 
 N.C. Gen.Stat. §§ 115C-325.4(a)(1), (4), (9), (10) (2014),
 
 amended by
 

 2015 N.C. Sess. Laws 2015
 
 -24, § 8.38(a) ("No teacher shall be dismissed ... except for one or more of the following: (1) Inadequate performance.... (4) Neglect of duty.... (9) Failure to fulfill the duties and responsibilities imposed upon teachers....
 

 *754
 
 (10) Failure to comply with such reasonable requirements as the board may prescribe.").
 

 Further, there is nothing in the record to suggest that respondent-Board failed to consider and weigh all of the evidence or that respondent-Board's decision was "patently in bad faith, or whimsical."
 
 In re Alexander,
 

 171 N.C.App. at 660
 
 ,
 
 615 S.E.2d at 416
 
 (citation omitted). Accordingly, respondent-Board's decision to terminate petitioner was supported by substantial evidence in the record and was not arbitrary or capricious.
 

 Petitioner complains that the evidence relied upon by respondent-Board was "incompetent, unsubstantial, unreliable, and/or inadmissible." In a dismissal hearing before a school board, the board "may give probative effect to evidence that is of a kind commonly relied on by reasonably prudent persons in the conduct of serious affairs." N.C. Gen.Stat. § 115C-325.7(4) (2014). Here, the testimony of students, a teacher, the principal, the superintendent, written student statements, a video recording of petitioner's actions, and school board policies all constitute the type of probative evidence to which respondent-Board was entitled to give consideration. Petitioner's argument on this point is without merit.
 

 Petitioner also challenges what he deems respondent-Board's lack of required findings of fact. However, the procedures for a teacher dismissal hearing that govern petitioner's case do not require the board to
 
 *433
 
 make specific findings of fact or conclusions of law.
 
 See
 
 N.C. Gen.Stat. §§ 115C-325.4 through -325.8 (2014). Rather, a teacher "may not be dismissed ... except upon the superintendent's recommendation based on one or more of the grounds in G.S. 115C-325.4."
 

 Id.
 

 § 115C-325.6(a). Those grounds include,
 
 inter alia,
 
 inadequate performance, neglect of duty, and failure to fulfill the duties and responsibilities imposed upon teachers or administrators.
 
 See
 

 id.
 

 §§ 115C-325.4(a)(1)-(9). Prior to a recommendation of dismissal or demotion, written notice to the teacher, setting forth "the grounds upon which [the superintendent] believes such dismissal or demotion is justified,"
 

 id.
 

 § 115C-325.6(b), is also required.
 

 Respondent-Board's written notice to petitioner of the basis for his dismissal included the following:
 

 The board determined that your conduct in your classroom at Tar River Academy on Friday, October 17, and Monday, October 20, required your termination. Your failure to appropriately respond to a student who became agitated in your classroom on Friday, October 17, created an unsafe situation during which the student injured himself.
 

 *755
 
 Rather than maintaining order in your classroom and contacting the front office for assistance with the student in the hallway, you created additional commotion inside the classroom by removing your shirt.
 

 Despite being provided an opportunity to prove that the Friday incident was an aberration, on the following Monday, you made an inappropriate comment to a female student while touching her hair. Despite testimony at the January 8 hearing about the effect that your conduct had on the student in question and a student who witnessed the interaction, you continued to maintain that you had done nothing wrong.
 

 The above written notice clearly conveys respondent-Board's determination that petitioner's conduct warranted dismissal and the precise facts upon which that determination was based. Accordingly, as respondent-Board provided the requisite notice to petitioner pursuant to N.C.G.S. § 115C-325.6, petitioner's argument that respondent-Board was required to make "findings of fact and conclusions of law" is overruled.
 

 Finally, petitioner makes a generalized argument that his constitutional rights were violated and his property taken without due process. He neglects to cite to any authority in support of these assertions.
 
 See
 

 State v. Hunter,
 

 305 N.C. 106
 
 , 112,
 
 286 S.E.2d 535
 
 , 539 (1982) ("[A] constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." (citations omitted)). Further, because the record fully establishes that petitioner was afforded the process and procedure to which he was entitled pursuant to N.C. Gen.Stat. §§ 115C-325.4 through- 325.8, petitioner's argument is overruled, and we find that respondent-Board's decision was not unconstitutional or otherwise made upon improper procedures or affected by error of law.
 

 Thus, as the trial court's order affirming respondent-Board's termination of petitioner was made upon lawful procedures, was not affected by error of law, was supported by substantial evidence, and was not arbitrary or capricious, the order of the trial court is
 

 AFFIRMED.
 

 Judges DILLON and ZACHARY concur.
 

 [1]
 

 N.C. Gen.Stat. § 150B-51(b) of the APA states as follows:
 

 (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible under G.S 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 N.C.G.S. § 150B-51(b) (2015) ;
 
 see also
 

 Joyner v. Perquimans Cnty. Bd. of Educ.,
 

 231 N.C.App. 358
 
 , 364-65,
 
 752 S.E.2d 517
 
 , 521-22 (2013) (holding the trial court was correct in applying the "whole record test" in undertaking its review of the Board of Education's decision and citing N.C. Gen.Stat. § 150B-51(b) for the appropriate standard of review).
 

 [2]
 

 N.C. Gen.Stat. § 115C-325(n) states as follows:
 

 (n) Appeal.
 
 -Any career employee who has been dismissed or demoted under G.S. 115C-325(e)(2), or under G.S. 115C-325(j2), or who has been suspended without pay under G.S. 115C-325(a)(4a), or any school administrator whose contract is not renewed in accordance with G.S. 115C-287.1, or any probationary teacher whose contract is not renewed under G.S. 115C-325(m)(2) shall have the right to appeal from the decision of the board to the superior court for the superior court district or set of districts as defined in G.S. 7A-41.1 in which the career employee is employed. This appeal shall be filed within a period of 30 days after notification of the decision of the board. The cost of preparing the transcript shall be determined under G.S. 115C-325(j2)(8) or G.S. 115C-325(j3)(10). A career employee who has been demoted or dismissed, or a school administrator whose contract is not renewed, who has not requested a hearing before the board of education pursuant to this section shall not be entitled to judicial review of the board's action.
 

 Id.
 

 § 115C-325(n) (2015).